EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| MALLINCKRODT PLC, *et al.,* | ) | Case No. 20-12522 (JTD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| MALLINCKRODT PLC, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adv. Proc. No. 21-50428(JTD) |
| | ) | |
| City of Rockford, | ) | |
| | ) | |
| Defendants. | ) | **Re: D.I. 2** |

### MEMORANDUM OPINION AND ORDER

The Debtors commenced this adversary proceeding on April 30, 2021, seeking a

determination and declaration of dischargeability of alleged claims and debts of the City of

Rockford (the "**Adversary Complaint**")[1] and, simultaneously, filed a Motion for Summary

Judgment (the "**Motion**") and brief in support.[2]  Defendants, the City of Rockford ("**Rockford**")

moved to dismiss the Adversary Complaint,[3] and also filed its opposition to the Motion (the

"**Opposition**") and supporting declaration.[4]  The Debtors filed their reply,[5] and a hearing was

held on June 7, 2021.  For the reasons set forth below, the Motion is granted.

---

[1] Adv. D.I. 1.

[2] Adv. D.I. 2, 3.

[3] Adv. D.I. 12, 13.  At the June 7 hearing, I issued a bench ruling denying the Motion to Dismiss as frivolous.  A written opinion expanding on that ruling is forthcoming.

[4] Adv. D.I. 21, 22.

[5] Adv. D.I. 28.

## BACKGROUND

Rockford filed 82 proofs of claim in the Debtors' chapter 11 bankruptcy cases.[6]  Each alleges a claim for at least $1.3 million by referring to litigation that Rockford filed against the Debtors prepetition.  To substantiate its claims, Rockford attached an addendum to each proof of claim (the "**Addendum**").  The Addendum explains that Rockford is a member of a proposed class of purchasers of the prescription drug, H.P. Acthar Gel ("**Acthar**"), manufactured and sold by the Debtors, as alleged in an action pending in the United States District Court for the Northern District of Illinois (the "**Illinois Court**").  In some instances, the Addendum attaches the complaint in that action (the "**Rockford Complaint**"), a list of purported Acthar purchases, and Acthar Support and Access Program ("**ASAP**") forms that Rockford alleges demonstrate its membership in the putative class.  In others, it attaches only an Addendum.[7]

The Rockford Complaint, which was the second amended complaint (or the third complaint filed in that action) originally included fifteen counts, asserting claims for unjust enrichment, fraud, conspiracy to defraud, monopolization of the market, anti-competitive agreements, violations of state antitrust law, violations of the Racketeer Influenced and Corrupt Organizations Act ("**RICO**"), breach of contract, promissory estoppel, declaratory judgment, and breach of the implied covenant of good faith and fair dealing.

---

[6]  See Adv. D.I. 1, Ex. A (Listing proofs of claim).

[7]  Rockford appears to have filed two different types of proofs of claim – one purporting to be an individual proof of claim and one purporting to be a class proof of claim, though the Addendums attached to both refer to the class action.  One version of the proof of claim values the claims at $1.3 million while the other values the claims at $3.8 million.  Additionally, one version of the Addendum states that preliminary class damages are calculated to be $1.2 billion.  Some proofs of claim attach the Rockford Complaint and documents referenced above, others do not.  Lastly, while only two of the debtors, Mallinckrodt ARD, Inc. and Mallinckrodt PLC, were named in the Rockford Complaint, Rockford filed proofs of claim against additional debtors as well.  *Compare e.g.,* Proof of Claim 6822 *with* Proof of Claim 4377, C.A. No. 20-12522, Claims Register.

The fraud claims included in the Rockford Complaint alleged that Debtors had made material misrepresentations to Rockford by charging artificial prices that were the product of the Debtors' and other defendants' alleged anti-competitive conduct rather than reflective of the actual value of Acthar (the "price as the misrepresentation" theory). But these fraud claims were dismissed by the Illinois Court, which concluded that Rockford had failed to plead the who, what, when, where, and how components of a valid fraud claim and that "high prices do not in and of themselves constitute false representations." See *City of Rockford v. Mallinckrodt ARD, Inc.*, 360 F.Supp. 3d 730, 777 (N.D. Ill. 2019). The Illinois Court also dismissed several other counts of the Rockford Complaint, leaving only the claims for monopolization, anti-competitive agreements, and antitrust violations in play. *Id.* at 778.[8] The fraud-based claims were dismissed without prejudice and Rockford was given 45 days from the date of the order to correct the deficiencies and replead. It never did so.

Because Rockford has repeatedly asserted in pleadings and in court proceedings that its claims are not dischargeable, the Debtors filed the Adversary Complaint, seeking a declaratory judgment that Rockford's claims are dischargeable pursuant to section 1141(d)(1)(A) of the Bankruptcy Code and that the claims are not excepted from discharge pursuant to section

---

[8] Although Rockford states in its Addendum that "[t]he *Rockford* Court denied the Defendants' Motion to Dismiss," this is clearly not true. When asked to explain this blatant misrepresentation of the Illinois Court's ruling during the hearing, counsel for Rockford argued that because the dismissal of the fraud claims was for a failure to plead with particularity as required by Rule 9(b), the dismissal was merely technical in nature, not a commentary on the merits of the underlying claims, and perhaps somehow not an actual dismissal. As a lawyer, Rockford's counsel should understand the legal significance of the dismissal of a claim, regardless of the reason. He should also know that, as a matter of plain English, describing a motion that was both denied in part and granted in much larger part as simply denied is, at the least, inaccurate and at the most, intentionally deceptive. Read in context, it appears that the statement was meant to imply that the Illinois Court believed that all of Rockford's claims have merit, which simply is not true.

1141(d)(6)(A) because they are not based on false pretenses, false representations, or actual fraud as section 523(a)(2)(A) requires.[9]

In conjunction with filing the Adversary Complaint, Debtors also filed this Motion seeking summary judgment because, they argue, there are no genuine issues of material fact in dispute.[10]  Specifically, the Debtors argue that even assuming all the allegations contained in Rockford Complaint are true, the claims are insufficient as a matter of law to satisfy the requirements of section 523(a)(2)(A) because the claims that remain after the Illinois Court's ruling on the motion to dismiss do not sound in fraud.[11]

In its opposition, Rockford argues that summary judgment is not appropriate for three reasons.  First, it argues that consistent with Federal Rule of Civil Procedure 56(d) summary judgment would be premature because Rockford has not had the opportunity to take discovery with respect to the claims.  Second, Rockford argues that it should be granted leave to amend its complaint to add additional fraud-based claims.  And last, Rockford argues that there are genuine issues of material fact at issue that would preclude entry of summary judgment.[12]  I will address each of these arguments below.

## **JURISDICTION**

This Court has jurisdiction to consider this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b) and

---

[9]  Adversary Complaint, Adv. D.I. 1, ¶¶ 33-35.  While the Adversary Complaint also raises the possibility that Section 523(a)(2)(B) might apply, the Debtors included a footnote in their opening brief that states that Section 523(a)(2)(B) is inapplicable here because the Rockford Complaint does not include an allegation that the Debtors made "a materially false written statement concerning financial condition" as that section requires.  Adv. D.I. 3 at 8 n.9.  Accordingly, I have not considered it.

[10]  Adv. D.I. 2.

[11]  Adv. D.I. 3.

[12]  Adv. D.I. 21.

the Amended Standing Order of Reference from the United States District Court for the District

of Delaware, dated February 29, 2012.

## ANALYSIS

### I.    LEGAL STANDARDS

#### A.  Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure, made applicable by Federal Rule of

Bankruptcy Procedure 7056, provides that summary judgment shall be granted when the moving

party shows that "there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." See Fed. R. Civ. P. 56(a).  "Summary judgment procedure is

properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the

Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) quoting Fed.

R. Civ. Proc. 1.  In considering whether summary judgment is appropriate, courts may consider

pleadings, depositions, documents, affidavits or declarations, stipulations, admissions,

interrogatory answers, or other materials that would be admissible or usable at trial.  *See* Fed. R.

Civ. Proc. 56 and 10A Fed. Prac. & Proc. Civ. § 2721 (4th ed.).

When the moving party's evidence shows a lack of genuine issue, the burden shifts to the

opposing party to "go beyond the pleadings" and "designate specific facts showing that there is a

genuine issue for trial."  *See Celotex Corp.,* 477 U.S. at 324-25 (internal quotations omitted).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that there be no

*genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986) (non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts.").

### B. Declaratory Judgment

"In a case of actual controversy within its jurisdiction, […] any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. . . ." 28 U.S.C. § 2201.  In the Third Circuit, "[t]he standard for granting summary judgment on a request for a declaratory judgment is the same as for any other type of relief."  *See Cloverland-Green Spring Dairies, Inc. v. Pennsylvania Milk Mktg. Bd.*, 298 F.3d 201, 210 n.12 (3d. Cir. 2002).  Summary judgment is proper if, viewing the record in the light most favorable to the nonmovant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. Proc. 56(c).

## II.   DISCUSSION

### A.   The Need for a Declaratory Judgment

 Here, the Debtors have established the existence of an actual controversy.  Rockford has asserted multiple times that it believes its claims are not dischargeable.[13]  Resolution of this controversy is needed in order to provide the Debtors with some degree of certainty regarding potential liabilities that it will need to plan for after the bankruptcy cases conclude and as the Debtors move toward confirmation of a plan of reorganization.  I am satisfied that the requirements for a declaratory judgment have been met.

---

[13] *See, e.g.*, Acthar Plaintiffs' Motion for Order Extending Time to File a Complaint to Determine Dischargeability of Certain Acthar Related Claims Pursuant to 11 U.S.C. § 1141(d)(6) (D.I. 1380) (stating that "the Acthar Plaintiffs do not contend that the deadline is applicable to the Claims, and are filing this Motion as a precautionary measure."); Acthar Plaintiffs' Brief in Opposition to Debtors' Motion for Temporary Restraining Order (Adv. No. 20-50850, D.I. 33 at 4 n.9 ("The Acthar Plaintiffs contend – and will show at the appropriate time – that their antitrust claims are non-dischargeable, willful acts of Mallinckrodt).

## B.      Dischargeability under Section 1141(d)(6)(A)

"[A] corporate debtor's discharge in a chapter 11 case is generally all encompassing." 8 Collier on Bankruptcy ¶ 1141.05[1][b] (16th ed. 2021); s*ee also In re Cohn*, 54 F.3d 1108, 1113 (3d Cir. 1995) ("The overriding purpose of the Bankruptcy Code is to relieve debtors from the weight of oppressive indebtedness and provide them with a fresh start."). Exceptions to discharge are limited in chapter 11 cases involving corporate debtors. *See* 11 U.S.C. § 1141(d). A creditor asserting the non-dischargeability of a debt bears the burden of proof to establish entitlement to discharge by a preponderance of the evidence. *Cohn*, 54 F.3d at 1114 (citing *Grogan v. Garner*, 498 U.S. 279, 287–88 (1991)). "Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors." *Cohn*, 54 F.3d 1113.

"A preconfirmation debt is dischargeable unless it falls within an express exception to discharge." *Fed. Commc'ns Comm'n v. NextWave Pers. Commcn's Inc*., 537 U.S. 293, 303 (2003). One such exception is set forth in Section 1141(d)(6), which provides that confirmation of a plan does not discharge a debtor that is a corporation from any debt "of a kind specified in paragraph (2)(A) or (2)(B) of Section 523(a) that is owed to a domestic governmental unit . . . ." 11 U.S.C. § 1141(d)(6). Section 523(a)(2)(A) excepts from discharge debts "for money, property, services, or an extension, renewal, or refinancing of credit" to the extent obtained by "false pretenses, a false representation, or actual fraud."

To demonstrate that a debt falls within the scope of section 523(a)(2)(A), a creditor must prove the following:

1) The debtor made the misrepresentations or perpetuated fraud;

2) the debtor knew at the time that the representations were false;

3) the debtor made the misrepresentations with the intention and purpose of deceiving the creditor;

4) the creditor [justifiably] relied on such misrepresentations; and,

7

5) the creditor sustained loss and damages as a proximate result of the misrepresentations having been made.

*In re Giarratano*, 299 B.R. 328, 334 (Bankr. D. Del. 2003).  These requirements have not been met here.

The counts that remain as viable in the Rockford Complaint following the Illinois Court's ruling on the defendants' motion to dismiss state claims for violations of antitrust law, monopolization of the market, and anti-competitive agreements.  None of these claims sounds in fraud, and Rockford does not attempt to argue that that they do.  Accordingly, I find that the claims asserted in the Rockford Complaint are dischargeable and not subject to the exception set forth in section 1141(d)(6)(A).  *See Maxum Indem. Co. v. Oxford Interior Corp.*, 443 F. Supp. 348, 351 n.2 (E.D.N.Y. Mar. 9, 2020) "a party 'concedes through silence' arguments made by its opponent that it fails to address . . ."); *Pope v. Swanson*, No. CA 07-652-GMS, 2009 WL 2507928, at *2 (D. Del. Aug. 17, 2009) (failure to address arguments demonstrated that they were conceded).

Even so, Rockford raises several alternative arguments as to why summary judgment should not be entered that must be addressed.

### C.   Rockford's Arguments

#### 1.   Rule 56(f)

Rockford's first argument is that the Debtors' Motion is premature because "discovery between the parties has never been had on the issues raised by Plaintiff's Motion."[14]  Rockford's position is that since "no formal order has been entered by the Court allowing the Acthar Plaintiffs to exercise their full discovery rights against Mallinckrodt… at this time, the Acthar

---

[14] Opposition, Adv. D.I. 21 at 6.

Plaintiffs have not obtained any meaningful discovery against Mallinckrodt."[15]   Accordingly,

Rockford argues that the Motion should be denied pursuant to Rule 56(d).

Rule 56(d) of the Federal Rules of Civil Procedure provides that "[i]f a nonmovant shows

by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its

opposition [to the motion for summary judgment], the court may: (1) defer considering the

motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3)

issue any other appropriate order." Fed. R. Civ. P. 56(d); Fed. R. Bankr. P. 7056.  In the Third

Circuit, this requires that "a party seeking further discovery in response to a summary judgment

motion submit an affidavit specifying, for example, what particular information is sought; how,

if uncovered, it would preclude summary judgment; and why it has not previously been

obtained." *Dowling v. City of Philadelphia*, 855 F.2d 136, 139-40 (3d Cir. 1988).

Rockford argues that the DeWitt Declaration, filed with its Opposition, satisfies these

requirements.  I disagree.  While the DeWitt Declaration does detail specific desired discovery

and, in some instances outlines what that discovery might prove, none of the discovery identified

relates to the existing claims in the Rockford Complaint.  Rather, the discovery outlined relates

only to new claims that Rockford now seeks to add.

Having opted not to replead its original fraud claims based on the "price as the

misrepresentation" theory in the Rockford Action, Rockford now seeks to assert new fraud

claims based on a theory asserted in two *qui tam* actions filed against the Debtors.  This theory

asserts that the Debtors were engaged in an illegal marketing scheme regarding the "off-label"[16]

---

[15] *Id.*

[16] A medication is used "off-label" if it is used for a purpose or in a manner that has not yet been approved by the FDA. A medication is used "on-label" if it is being used for a purpose or in a manner that has been approved by the FDA.

promotion of Acthar to treat multiple sclerosis (MS).[17] The discovery outlined in the DeWitt Declaration relates only to these new claims, not the ones contained in the complaint attached to the proofs of claim.[18] This is not an appropriate use of Rule 56(d).

The purpose of Rule 56(d) is to allow for discovery that might provide additional support for existing claims, not to facilitate discovery regarding new claims. *See Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994) ("[Nonmovant's] argument is that it should be allowed to find out if it has a claim, rather than that it has a claim for which it needs additional discovery. Such divagation is decidedly not the object of the discovery procedures outlined in the Federal Rules of Civil Procedure."). The only paragraph of the DeWitt Declaration that could even arguably be read to apply to the present claims in the Rockford Complaint is paragraph 50, but even it is vague and fails to identify with any specificity exactly what it is that Rockford needs or how it would preclude summary judgment.[19]

Further, the DeWitt declaration is also insufficient under Rule 56(d) because it fails to explain why the information sought is not already in Rockford's possession and why it has waited until now to seek it. A lengthy period of discovery had taken place in the Rockford Action before it was stayed. Hundreds of thousands of documents were produced and several

---

[17] *See, e.g.*, Opposition, Adv. D.I. 21 at 18.

[18] *See, e.g.,* Dewitt Declaration, Adv. D.I. 22, ¶ 49 ("The testimony of these key opinion leaders is necessary to demonstrate that the company, through its authorized agents, used supposedly independent physicians to alter the scientific literature, promote the use of Acthar off-label in violation of FDA regulations, and conspire to defraud and actually defraud patients, physicians and third-party payors."); *id.* ¶ 61 ("The City of Rockford will seek all correspondence between all KOLs and all Mallinckrodt entities. This information is necessary to prove up the relationships as well as the methods used to promote, off-label, the use of Acthar.").

[19] *Id.*, ¶ 50 (stating the depositions of two high level executives at Mallinckrodt "are necessary to place before the fact-finder the numerous false and misleading statements made by these individuals in their capacity as the corporate officers of Debtors, and to demonstrate that the conduct is ongoing and unrelenting. It would preclude summary judgment by demonstrating one or more of the elements of fraud, consumer fraud, and violations of 18 U.S.C. § 1962 as well as preventing dismissal of an amended complaint for the same reasons.").

depositions were taken. Rockford had ample opportunity to seek the discovery it now claims it needs.

For these reasons, Rockford's Rule 56(d) declaration does not establish the need for any discovery with respect to the claims asserted in the proofs of claim. It is therefore an insufficient basis on which to deny summary judgment.

## 2. Leave to Amend

Rockford next argues that because the Illinois Court granted leave to amend the Rockford Complaint when it dismissed the fraud claims, that leave should freely be granted here. Rockford is confused.

The Rockford Action, and the pleadings filed therein, are not before this Court – they are pending in the United States District Court for the Northern District of Illinois. This Court therefore lacks jurisdiction to issue an order allowing amendment to the Rockford Complaint. What Rockford is really seeking to do here is amend its proofs of claim.

The time to file proofs of claim in this case has passed.[20] The decision to allow amendments to a proof of claim is within the discretion of the Bankruptcy Court. *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 309 (3d Cir. 1999). "While belated *amendments* will ordinarily be 'freely allowed' where other parties will not be prejudiced, belated new claims will ordinarily be denied, even absent prejudice, unless the reason for the delay is compelling." *In re Enron Corp.,* 419 F.3d 115, 133–34 (2d Cir. 2005). "[A]llowance of a subsequent claim turns on whether the subsequent claim may be fairly characterized as an amendment of a timely filed claim or in substance a new claim. The subsequent claim is an amendment if it: 1) corrects a

---

[20] *See* Order (A) Establishing Bar Dates and Related Procedures for Filing Proofs of Claim and (B) Approving Form and Manner of Notice Thereof, D.I. 667.

defect of form in the original claim; 2) describes the original claim with greater particularity; or 3) pleads a new theory of recovery on the facts set forth in the original claim." *In re FLYi, Inc.*, No. 05-20011MFW, 2008 WL 170555, at *2–3 (Bankr. D. Del. Jan. 16, 2008) citing *In re McLean Indus., Inc.,* 121 B.R. 704, 708 (Bankr.S.D.N.Y.1990). The claims that Rockford now seeks to assert do not correct a defect, describe the original claim with greater particularity, or plead a new theory of recovery on existing facts. They are therefore new claims. As such, Rockford would need to establish a compelling reason for its delay in filing them. It has not done so. Rockford has offered no valid explanation as to why it did not include the new fraud claims in its original proofs of claim. As Rockford concedes in its Opposition, the facts on which these claims are based were in Rockford's possession as early as September 2019.[21] Accordingly, I find Rockford's delay in asserting these claims to be undue.[22]

For this same reason, to the extent Rockford's request could be interpreted as one pursuant to Rule 9006(b)(1) to file a new claim after the bar date, it would also be denied. Such claims are allowed where failure to comply with the deadline was the result of "excusable neglect." *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'shipp*, 507 U.S. 380, 382-83 (1993). Rockford has not offered any explanation for its failure to file these claims on time. Because there is no basis in the record for me to conclude anything other than that the absence of these new fraud claims from the proofs of claim was intentional, I cannot find that Rockford's failure to include them constitutes excusable neglect.

---

[21] Opposition, Adv. D.I. 21 at 2 ("[I]n the summer, with the unsealing of the Qui Tam Complaint, the facts of Mallinckrodt's fraud were publicly revealed, at least in part. Then, in September 2019, with Mallinckrodt's agreement to settle a portion of the False Claims Act claims, these facts were conceded.").

[22] While Rockford argues that it included a footnote in the Addendum that indicated it was "reserving its right" to amend or supplement the proof of claim to include any claim, including those asserted in *Steamfitters Local Union No. 420 v. Mallinckrodt plc, et al.*, C.A. No. 2:19-cv-03047-BMS, such "reservation" has no legal effect. One cannot "reserve" a right it does not have.

Further, even if the Court did have jurisdiction to grant leave to amend the Rockford

Complaint, either on the basis that the Illinois Court granted leave or under the applicable

provision of Federal Rule of Procedure 15 (made applicable by Federal Rule of Bankruptcy

Procedure 7015), leave to amend would still not be granted.  Rockford has had the facts relevant

to its proposed amendment in its possession for more than a year and a half now.  Though it

argues that it was waiting for the close of discovery in December of 2020 to replead, it never

sought the Illinois Court's approval to replead beyond the 45 days it was granted, which passed

in March of 2019.  At that point, the Illinois Court would have been well within its right to

consider the claims it had previously dismissed without prejudice to be dismissed with prejudice.

*See e.g. Skyles v. McCoy*, 730 F. App'x 769 (11th Cir. 2018) (holding that district court did not

abuse its discretion in dismissing complaint with prejudice where plaintiff failed to cure noted

deficiencies within the amendment deadline and stating "[t]he district court was under no

obligation to permit [plaintiff] a second leave to amend.").

Additionally, while Rockford admits in its Opposition that it made the decision not to

replead in 2019 because it lacked sufficient facts to make a claim that would withstand Rule 9(b)

and Rule 11, it has not explained how, if leave to amend was allowed now, these same claims

would suddenly pass muster.  I have significant concerns about Rockford's ability to satisfy Rule

11 with respect to the claims it seeks to add.  The fraud theory contained in the proposed new

claims is premised on marketing practices with respect to "off-label" uses of Acthar to treat

multiple sclerosis ("MS").  Rockford submitted sworn interrogatory responses in the Rockford

Action claiming that it only paid for "on-label" uses of Acthar to treat infantile spasms.  While

Rockford's counsel argued at the hearing that Rockford paid for off-label uses of Acthar,

counsel's statements are not evidence.  Significantly, Rockford itself did not submit a declaration

in opposition to the Motion alleging that it paid for <u>any</u> off-label use of Acthar, let alone to treat MS.[23]

Additionally, I agree with the Illinois Court that Rockford would have significant difficulty establishing justifiable reliance here:

> Plaintiffs allege that they and the class "justifiably relied upon false misrepresentations in purchasing and/or reimbursing <u>Acthar</u> at the amount charged by Express Scripts and CVS Caremark based on the price set by Mallinckrodt." But in this factual scenario that concerns only one manufacturer and one drug, the issue of the reasonableness of plaintiffs' reliance is problematic. Plaintiffs assert that they would not have paid or reimbursed the cost of Acthar if they were aware of the alleged misrepresentations. Are plaintiffs saying that rather than pay exorbitant prices they would have left the Acthar patients without treatment? Regardless, at this juncture the court concludes that reliance is sufficiently pled.

*Rockford*, 360 F. Supp. 3d at 777 n35. For these reasons, Rockford's request, whether it is one to for leave to amend the Rockford Complaint or to amend its proof of claim, is denied.

### 3. Genuine Issues of Material Fact

Rockford's final argument is that the Debtors have not established that there are no genuine issues of material fact in dispute. Rockford attempts to establish this by setting forth a list of ten "facts at issue" that preclude entry of summary judgment, including that the Debtors "promoted the use of Acthar off-label in violation of FDA agreements," that "the Debtors' fraudulent marketing efforts increased prescriptions for Acthar for off label uses…", and that the Debtors "engaged in fraudulent, false and deceptive claims of Athar's efficacy, safety, and

---

[23] *See e.g.* Proof of Claim 6822, Ex. C (proof of Acthar purchases to treat infantile spasms and opsoclonus myoclonus syndrome only); *see also* Rockford's Responses to Defendant's Interrogatories, Adv. D.I. 28, Ex. A at 6 (responding to the interrogatory that asks Rockford to identify details regarding every purchase of Acthar by stating only that "Acthar was administered to two children with Infantile Spasms."); Opposition at 18-21 (describing alleged marketing scheme that promoted "off-label" use of Acthar to treat MS).

medical usefulness in order to promote the drug for off-label purposes…", among others.[24] Rockford misunderstands the facts that the Court needs to consider on this Motion.

The Adversary Complaint alleges that (1) Rockford filed proofs of claim that reference the Rockford Complaint as their sole basis; (2) The Illinois Court dismissed the fraud-based claims from the Rockford Complaint; (3) Rockford did not replead the dismissed claims; (4) no claims for fraud remain in the Rockford Complaint.[25]  It is these facts that Rockford must demonstrate are in dispute.  While the facts contained in the Rockford Complaint are referenced in my analysis, for purposes of resolving this Motion I have assumed that all those facts are true. Accordingly, any dispute the parties might have about those facts is irrelevant.

Rockford has not established that any of the relevant facts here are in dispute, nor could it since each one of them is independently verifiable. The facts that Rockford argues are disputed and preclude summary judgment here have nothing to do with the question that is before me, which is: do the remaining claims in the Rockford Complaint (even assuming the truth of all the allegations contained therein) qualify for exception from discharge under Section 1141(d)(6)(A) of the Bankruptcy Code.  As discussed above, the answer is no.

---

[24] Opposition, Adv. D.I. 21 at 24-25.

[25] Adversary Complaint, Adv. D.I. 1, ¶¶ 24 -27.

For all these reasons, Plaintiffs' Motion for Summary Judgment is GRANTED.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The Motion is **GRANTED**.

2.      Summary judgment is granted in favor of Plaintiffs on the Complaint under 28 U.S.C. § 2201.  A declaratory judgment is hereby entered that the Defendant's claims are dischargeable pursuant to section 1141(d)(1)(A) of the Bankruptcy Code and are not excepted from discharge pursuant to section 1141(d)(6)(A) of the Bankruptcy Code.


Dated:  June 16, 2021                                    _____
                                                                              JOHN T. DORSEY, U.S.B.J.